The letter is Wagner v. Northern Berks Regional Police Dept. Good morning, panel. My name is Thomas Bruno. I represent Jonathan Wagner. We're here because Jonathan Wagner was maliciously prosecuted by Officer Horner and the Northern Berks Regional Police Department. He was arrested in 2013, in January 2013, for stealing packages by following some delivery vans and putting them in his own and co-defendant's van. Can we just focus on that, just to be specific as to the January 2013 conviction? Correct. The 2013 conviction, as I understand it, was based on one theft? Is that correct? Well, he was charged with one theft, although there was the investigation and all the materials and the 19 packages were seized at the time of the arrest. I totally understand that. I just wanted to confirm that the count of conviction was for one theft? Correct. Correct. Thank you. Well, for one package. One package. One package. One package. Receiving stolen property, theft and conspiracy. Were all the packages related to the same episode? All the packages. All the packages. In 2013. Yeah. All the 2013 packages. Yeah. Go ahead. There were 19 packages in the van. So at least with regard to that day in January. Let me put it this way. Were both charges, did both charges stem from that same episode involving the 19 packages in the van? When you say both charges, what do you mean? He was charged in 2013 and he was recharged in 2014. Correct. Well, the 2013 charge he had pled guilty to in March of 2013. I understand. And he was in the van collecting packages, if you will. Let me put it this way. Was he recharged in 2014 and did those charges stem from that same episode in 2013? Yes. Same packages in the van? The same van, same 19 packages. Yes. Mr. Beck, I just want to make sure. He was convicted of one theft, but at the time of his arrest, he was also found in this van with a bunch of other parcels, correct? That is correct. And then the 2014 charges, were the charges based on those other parcels, correct? The original parcels, correct. Which is different than there was a charge. I just want to – I understand where my colleagues are coming from. There was an event, a police officer sees a theft, he's charged with one of those thefts. But at the time of that arrest, they also came upon a bunch of other packages that were stolen at different times from different victims, correct? Correct, but all located in that one van. So the receiving stolen property was all located there on that day. So in terms of his receipt, or the – Was he charged with receiving all of the parcels on the – for the 2013 conviction, for the receipt of stolen property charge? He was charged just with the one package receiving stolen property? For the receiving stolen property in 2013, he was charged with just one. Okay, thank you. He was not charged with the additional 19. Then the additional 19 are charged in the subsequent complaint. Correct. Got it. But all the information and the investigation occurred between January and February of 2013. Even speaking to the co-defendant who identified Mr. Wagner as the mastermind of the operation, if you will. And when he pled guilty in March of 2013, I think the reasonable expectation would be that that would include all the – No, I do not. Okay. I do not. But because, you know, the – but if the investigation is complete, and the probable cause that was there to arrest and prosecute him, and that investigation was complete, you can't use the same probable cause later on to daisy chain and start to prosecute, you know, 19. Because he could have prosecuted five at one time, then another five, then another five. Let me ask you this. I'm trying to understand this a little bit better. So all of this information regarding that first incident was available, and apparently the police officer, the same police officer involved in both charges, was aware and had beforehand information that there were 19 packages involving an episode between this – Mr. Wagner and one other person. Correct. That was in the police report. Is that correct? The police report – in his incident report, yeah, that there were 19 in the van, that they had the van, and that there were 19 packages in there with names and addresses of people who were not the defendant, you know. And I would like to point out to the court that at the criminal trial where the trial judge dismissed on double jeopardy grounds, he specifically said in the record, I'm familiar with this police department and I'm familiar with this officer, and then proceeded. What does that mean? Is that in the record, first of all? That is in the record, yes. That's in the transcript of when he dismisses. I'm familiar with this police department, I'm familiar with this officer, and he goes on to say I'm going to dismiss the charges on double jeopardy basis. See, actually, there wasn't a non-compulsory joinder. Well, he says double jeopardy. His words were double jeopardy. Anyway, they're married so tightly, so tightly intertwined in Pennsylvania law. Yes. But your view is, from a legal point of view, is that somehow a police officer is duty bound when they're doing a probable cause assessment to also know and consider complicated legal defenses or legal preclusions, such as double jeopardy with a compulsory joinder rule in Pennsylvania. I don't know that it's complicated. I believe since the 1970s the double jeopardy concept has existed. But even the Pennsylvania court system has described it as it being a difficult issue to wrestle with, and the statute itself, the compulsory joinder rule, puts the burden on the prosecutor's awareness of the other charges, not the police officer. So are we blaming the wrong person here? No, we're blaming the police officer who went over and above in terms of his omissions in his second probable cause effort. They didn't even acknowledge the probable cause that he had in January and February and that his investigation had been completed before the March. What was the probable grounds, probable causes for the 2014 complaint? That he had these packages and that he had a statement from the co-defendant that Mr. Wagner was involved, which is the same or similar statement that he had back in January. Was there a date that he had these packages? In May, what happened is that the investigation, identification of all the packages and who the rightful owners are were completed in March, before the March conviction or before the March guilty plea. In May, the officer had another conversation with the co-defendant and he attempts to bootstrap that into new information when in fact it was old information. But didn't he have new information though, didn't he? In the May interview with this co-conspirator, he talked about a theft in 2012. So there was new information, wasn't there? No, I believe that they knew about December 2012 because he said that's when it began in December 2012. Oh, he talked about February 2012, but maybe I'm mistaken. No, when the original investigation began after the arrest in January 2013, the incident report specifically identifies that this had begun, this operation or episode, whatever you want to call it, began December 2012. Which incident report? For the 2013 arrest? The 2013, yes, incident report specifically mentions that it began in 2012. But according to my understanding from appendix 55 to 59, which talks about the interview with the co-conspirator, that thefts had been going on from various victims dating back to February of 2012. And I bring that up only to share that wasn't there new information available to this officer? I don't know that February 2012. That's what my understanding is, but I'm happy to correct it. I don't believe it's February 2012, I believe that was December 2012. Happy to check. Which I believe is reflected in the original. But the issue here is the existence of probable cause, facts to show that a reasonable person would think a crime was committed by the individual at issue. It's without dispute that there were facts that showed this individual was involved in thefts and therefore committed violations of Pennsylvania law. So probable cause exists. Your challenge is that that probable cause determination should somehow be vitiated by the prior conviction, correct? Well, it was the same probable cause and everything should have been joined together constitutionally. And once you've used it, you can't use it a second time if you have the exact same facts. For the purposes of discussion, I'll assume you're correct. But is it an officer's obligation in making the probable cause determination to consider affirmative defenses? Our court has already said things like statute of limitations is not something a police officer needs to consider. Necessity is another defense a police officer doesn't need to consider. If we're not going to require, as a matter of our own precedent, an officer to consider those sorts of affirmative defenses, how can we then impose upon an officer to have to consider the compulsory joinder rule, particularly when that rule puts the onus on the prosecutor? Well, I would just say to the court that the trial court judge said what the officer should have done is to have alerted the district attorney's office and the prosecutor. Let them know what the issue is. Let them make the decision. Don't go, you know, off the reservation, if you will. Don't go making your own determination, especially where you're cherry picking information when you had it from before. So if you do that and if you do it with, you know, malice and as because this is a 12-6, we haven't had an opportunity to even explore that piece of it as to what the officer knew and when he knew it. Although we do know he knew about the 19 packages. He knew about the identity of Mr. Wagner. He knew that there was the master, that he was the mastermind, according to his, quote, witness. And he just completely, instead of going to the prosecutor, which would have been, and let the prosecutor then handle all the, if these are complicated issues, which in this case I don't think they are complicated, but if they are complicated, his job as a reasonable officer would go to the prosecutor and say, here's what all the information is. You sort it out. I'll go back to my police work on the street. Can we say that the law on this point was clearly established at the time the officer acted? Because this is a 1983 case. There's been an assertion of qualified immunity. Can we say the law was clearly established that a police officer was duty-bound to consider these sorts of affirmative defenses? I think that the police officer, double jeopardy, any reason police officers would know about double jeopardy since the 70s, any reason a police officer would have been trained in Campana, any reason a police officer would have known about Brown v. Ohio, which was a 1970s case. Was that the rationale that was used by the district court when the district court, I think it was the district court. No, the district court used a subjective standard as opposed to an objective standard. And he said that this officer may not have been aware of it. Well, first of all, we don't even know what he was aware of because we didn't have a chance to do the discovery, and he bounced us on a 12B6 motion. The charges were ultimately dismissed, right? The trial judge, yes, dismissed him on double jeopardy grounds. And as I said, he also has this comment on the record where he says. I'd like to say the trial judge. In this case? Yes. The district court judge here dismissed the case on 12B6, you know, on the 12B6 motion. Without giving us the opportunity to conduct discovery, without giving us the opportunity. Which judge dismissed it on double jeopardy? The trial court judge up in Berks County. State trial. The state trial court judge. I'm sorry. Yeah, these were state charges. So. Did you reserve time? I don't remember now. I did reserve time. So, yes. Thank you. Thank you. Mr. Gerber. Good morning, Your Honor. I just want to please support Christopher Gerber on behalf of the Northern Berks Regional Police Commission and Brian Horner, who now serves as chief of police. And, Your Honor, Judge Schwartz, I'll start by opening with this is a case. We have to question how much information do we impute to a police officer regarding some of these complicated issues? Let's forget about imputing. Help me with this. Was there anything in the affidavit for probable cause? I assume there was one for the 2014 arrest. Right. Right. Was there any information there that was not part of the 2013 packages? Yes, and if I can address that with Judge Schwartz's inquiry. Appendix 69, and this is where I'm not going to dispute the addition of additional information. Appendix 69 is an incident report from Brian Horner where he summarizes his interview of the co-conspirator May 8, 2013. Keep in mind that Mr. Wagner was first caught seen stealing packages in January, January 24th of 2013. He was charged with stealing packages from one residence, ultimately pled guilty to that charge. Then, subsequent to that. One package. That's right. One residence. One package or one residence? Both, I think. Both. Okay. And then you move forward and the investigation does go forward in reality. May 8, 2013 is when Detective Sergeant Brian interviews the co-conspirator. The co-conspirator coughs him up and gives probable cause to arrest him on the multitude of other thefts. Wait. When you say multitude of other thefts. Thefts not involving what was in the van in January 2013. Correct. I would like to make this clear. Nowhere in the complaint, the plaintiff in this case does not allege that he was charged with the same crime. He has brought a novel theory I've never seen before in representing police departments for 24 years. Where they're claiming essentially that the same criminal episode vitiates probable cause to arrest him on the charges for which he was charged. There's no dispute in this case that there is probable cause to arrest Mr. Wagner for the thefts of those packages in the van after he had already pled guilty. I would also like to point out this is a very. Yeah, hold up. But wasn't the police officer, wasn't the police officer when he filed that first claim know that there had been at least 19 packages in that van? He knew there were 19. At the time that he filed the first charge. He didn't have enough. He didn't have enough information to charge the defendant at that time. But that one package that he was charged with is a package that came from the van in which there were 19 packages located. An off-duty police officer had seen him take that package from a residence. So that's the difference. You're saying that for the episode in January 24th, 2013, there was a police eyewitness who saw the theft occurred. Exactly. Thereafter, a van with a bunch of other items were found. And it wasn't until May of 2013 that they could say Mr. Wagner was responsible for those additional thefts. Exactly. That's why this is not a double jeopardy case. No, same van. The same van. Same van. You're just saying that the van had items. But at that time. That's right. It's your position that the officer did not have probable cause to tie Wagner to those parcels. Not yet. Not yet. And what he found out later was that you had no less than six other incidents. I'm sorry, Judge. Go ahead. We're sort of confused. That one package that the police officer in this case used to initiate that charge, where did that one package come from? A residence that was, I don't have the name of the victim. I think what Judge Fuentes is asking is, did the theft occur and the police, the individual was stopped? Or did the parcel that was observed to be taken end up in the van? Right? That's what your question is? Yeah. Well, I don't know that. It came from several packages. Right. Okay. In other words, that one package that was used for that initial charge came from a van in which there were several packages. That's correct. That's correct. Now, on this theory, though, he could be charged multiple times for each one of those packages. Your Honor, under the U.S. Constitution, it's absolutely correct. In Pennsylvania, they have no. Wait a minute. Wait a minute. You mean there's no double jeopardy? No. No. Because he wasn't charged at the same time. I'm sorry to cut you off. But theoretically, he could be charged 19 times. And be sentenced 19 times. Under the United States Constitution, that's correct. Ouch. That is correct. Now, certainly, we're not going to do that. And there's a compulsory jointer statute in Pennsylvania that's going to deter that. But the point of the matter is my officer has been sued under Section 1983 of the Civil Rights Act where the plaintiff has to establish that he lacked probable cause. He has failed to do that. He has not alleged a Fifth Amendment double jeopardy claim. Why? Because this isn't double jeopardy in the U.S. Constitutional sense. There is a double jeopardy issue here, isn't there? That's what the plaintiff says. There is no double jeopardy. That was the initial judge's decision. No, no. Your courts were pretty clear in tying compulsory jointer to the Fifth Amendment guarantees. There is. And what Pennsylvania law will say is, of course, it is tied to the idea and the concept of double jeopardy. But our U.S. Supreme Court has rejected the idea that double jeopardy arises from similar criminal episodes. We're not just talking about the same crime, right? We're talking about a number of crimes. I'm trying to get it out. Are we talking about the same criminal episode? That's what I'm trying to focus on. Well, that's the issue. And, frankly, I think the criminal trial court got it wrong. When we're taking a look at numerous thefts with numerous victims that is actually contained in the documents that the plaintiff attached to the record. This reminds me of a shoplifting. I mean, you go into a store, you shoplift in different items in different rows, and you put it all into the same basket and you walk out. Oh, that's on the same day. These are multiple instances. Okay. And I hear you. Yeah. But, again, when we're talking about malicious prosecution under the U.S. Constitution, under the Fourth Amendment, the plaintiff has to establish that he lacked probable cause, that the officer had malice, and that he prevailed. Here, in this case, the plaintiff prevailed only because of a state law rule of criminal procedure that a state law judge found. All of these instances constitute the similar criminal episode. If you had a different police officer, if this action were brought against a second police officer based upon the arrest in January 2013, the discovery in January 2013 by a different officer, that would, I think, be a good argument. But this is a very different situation where you've got Officer A arrested for 19 packages January of 2013. Then, lo and behold, in 2014, Officer A again charges the plaintiff for packages, which may well be the same packages in the same van that were pulled over in 2013, and maybe the officer knew that. Maybe he did, maybe he didn't, but maybe he knew that. It doesn't change the analysis, respectfully, it doesn't change the analysis under the Fourth Amendment malicious prosecution. Well, it does if the officer knew in 2014, hey, this is the same stuff I got him for a year earlier. I got another package here I didn't, that he ratted out, and I didn't. He pled out to only one package. I got 18 more packages here. This is my lucky day. I'm going to gen this guy up for the rest of his life with these 18 packages, so I got him. I understand how it – Yeah, I'm not suggesting that's what happened here. Right. But I would submit that the case law in the Third Circuit and throughout the country has been clear that under a U.S. constitutional analysis, that same criminal episode is not to be equated with double jeopardy. And if I could cite U.S. Supreme Court in Currier v. Virginia, it says that this court has emphatically refused to import into criminal double jeopardy law the civil law's more generous same transaction or same criminal episode test. If you have – Go ahead. I'm sorry. If you have multiple, let's say, drug sales, you have a drug dealer on a street corner, he makes 100 sales. You can have 100 charges? I mean, is that – I agree with Your Honor. Under this analysis, that is the case law. That's – That is the case law. Well, so – I mean, I could say there's a fundamental unfairness in that. But what about, yes, compulsory joiner. What about double jeopardy? Well, there's no case out there that would place a police officer on notice, and I usually don't start off with qualified immunity. But this is important. This is why to think that two lawyers who deal with this plus the court are arguing about this today shows us that this is not clearly established. Okay, first of all, and I think that Sergeant Horner is entitled to qualified immunity at the very least. But to get to your question, I think that you look at each crime for which they are accused. So long as the police officer at the time he charges has reasonable belief that that person committed the crime, probable cause is established. That's right. Malicious prosecution cannot be shown. That's plain and simple. Then what's the remedy for someone in the hypothetical that Judges Fuentes and McKee are bringing you, an individual who knows that he could charge everybody – charge that individual once or he could charge them 19 times? What's the remedy for that person? He beats the rap, which is Mr. Wagner beat the rap. No one in this courtroom is saying he didn't do it. He was acquitted based upon that motive. Based upon a legal bar. But I'm talking about if there's a legal bar to repetitive – repeated prosecutions that, while would stand alone as separate offenses, nonetheless are being brought one after another after another until the statute of limitations concludes, right? What's the remedy for a defendant who faces that? He sat in custody in this case, correct? I understand that. There's no law. The only way that he could prevail in 1983. What is the remedy? Because you're saying, okay, the problem with – There's none under 1983, Judge. So you're saying you're – he may have a remedy, but his remedy may not be under 1983. He may create the wrong civil – Exactly. Not for monetary damages. It's plain and clear. What would he be under? Could he bring a negligence claim, are you saying? There could be some other common law action. They'd have governmental immunity. I don't know what the remedy would be. And quite frankly, I think that's for either Congress or the General Assembly to figure that out. We'll be here – we're here before this court. You said there would be immunity, but if the – you guys have a tort statute in the Commonwealth of Pennsylvania that if there's an intentional act, the immunity disappears. So there is another remedy. So is your position that the problem with this case is under Section 1983, in order to bring a Section 1983 malicious prosecution claim, the individual has to prove he was arrested without probable cause together with the malice? Yes, Your Honor. Is it your position that probable cause existed and that an officer is not required to consider affirmative defenses like compulsory joint or double jeopardy, even though that officer knows about other facts that may show, hey, this looks like the same crime I arrested him for before. Is that your position? I am. And I was before this court not long ago on whether affirmative defenses in a criminal statute should vitiate probable cause, and I would submit to this court that in the Third Circuit that's never been found, that has been entertained by this court, and I submit that that's – it's very dangerous. If we go down the road now permitting plaintiffs to seek monetary relief against police officers by imputing with the police officer, they're going to have to make these judgments. You're imputing. That's why this is a very unique case, it seems to me. What if the plaintiff could make out actual maliciousness on the part of the officer, actually establish that the officer knew that this was part of what he had pled to before, but figured I'm just going to go after him anyhow just to jerk him around? What if that was the case? I guess that's what we've been arguing about all day today is that he pled to before. He didn't plead – he wasn't charged with the same offense that he was. What if the plaintiff could show that, that the officer knew that, yeah, these packages were in the van back then, he only pled guilty to one, I can jerk him around and charge him with another one? I would concede this. If the officer charged him with stealing the same material for which he pled guilty, we'd have a Fifth Amendment problem all day. And you know what happened? That is – that's not alleged here. It's not alleged. He pled and the case was disposed of. That one? That's done. Then the officer goes back again and charges him again with another package in the same bundle. You say that he has no remedy. I'm not saying he doesn't have a remedy. I'm saying he has no remedy for monetary relief under Section 1983. The remedy in this case, again, he beat the rap. He was able to beat the charges. Yeah, but then that's his remedy. He spent time in jail. I said it's not this court to figure out whether he should have a remedy. That's for – frankly, I think that's for our politicians in Washington and, you know, in Parisburg. Here, my client has been charged with civil rights violations. They have to prove their case. They've come woefully short. You say he should have a remedy but not this one. I'm not making a judgment call, frankly. I think that my officer acted reasonably under the circumstances. I don't think the law was clearly established. But here's the problem, though. He knew. You say he acted reasonably. But he knew. There's no evidence that he knew anything. There's no evidence because it's called B-6. Right. But I would submit this, that the facts as alleged, we don't need discovery because the timeline of events and the undisputed facts that are in the record, as supplemented by the plaintiff himself, I think support the case. And, you know, Judge Leeson made a good point. Judge Leeson made a good point that that judicial determination that it should have been compulsory joiner was made after the fact. It was made after the fact. Now, you know, if the officer tried to charge him with a crime after that had been done, we might have a different problem, right? But it came after the fact. What do you mean after the fact? The order from the trial court, right, is after the charges had been filed. Okay. Okay, so there was no judicial determination placing the officer on notice that this was a compulsory joiner case. And I'll make one more point. I think this is a prosecutor issue. It is not a police officer issue. Section 110, I don't know how much time I have left, Section 110 of the Rules of Criminal Procedure talk about the prosecutor, you know, prosecution. I think that the direction should be to the DA's office. In Pennsylvania, the police officer has probable cause. He files an affidavit of probable cause with a neutral magistrate. They have a preliminary hearing, which was waived up in this case, interestingly. No argument was made at the preliminary hearing that there should have been a consolidation. You know, Mr. Graber, I know you're here, but theoretically, the defendant in this case can be charged multiple times. Supposing he goes back in the second case and everything's fine and he gets acquitted. Well, I got a third package, a fourth package. I'm going to get him one way or the other. I mean, and I don't really mean to suggest that this officer would do that, but if we were to go down that road, I mean, literally, you can have multiple charges on separate occasions involving the same episode. And that's where I see the problem. I understand Your Honor's point, but when we read the case law, the body of law does not address this. This is novel all day. Well, the facts are novel. You were getting some books. That's what's so different here. Well, look, there are plenty of cases that address the garden variety double jeopardy cases where, you know, it's the same crime arising from the same circumstance twice. The similar criminal episode is much different. It's much different because it isn't the same event. These are no fewer than six victims that are in the record, no fewer than six victims all over. By the way, my commission covers Maiden Creek Township, Ontolonee Township, and Leesburg Borough. I don't know that it's in the record, but the sergeant had to get authority through the DA's office to have jurisdiction to investigate all these crimes. There are people that rob different banks in different locations. Understood. Under your theory, then, we can have entirely different cases for each one of those bank robberies. I guess the question is where do we draw the line? No court in this circuit or the United States has drawn the line. First of all, address this head on, number one. But where do we draw the line of theft in Redding, Temple, Bland, and Hamburg, dating back to December of 2012, all the way through the time he got caught in January of 2013? Where do we draw the line? I hate to answer your Honor's question with a question, but I don't have the answer. And because we don't have the answer, it entitles my client to qualified immunity at the very least. What I really stress upon the court, please, what has been addressed before the Third Circuit is whether affirmative defenses in a criminal statute can come in and vitiate probable cause. I think that's very bad law. And I also think it's bad law to suggest that violation of a state rule of criminal procedure, such as the compulsory jointer statute, can serve retroactively and vitiate probable cause when it existed in the first place. Thank you very much. Thank you so much. Thank you. And that is, if I may, counsel had said that this is not the remedy. Well, there is no other remedy except the 1983 action. State law does not allow any remedy. There's sovereign immunity for any act that would have been similar to this. But aren't you imputing intent that this officer knew that he could have charged? Yes. But then I just wanted to touch a little bit on the immunity point. Isn't there a waiver of the tort claim immunity if it's an intentional act in the Commonwealth of Pennsylvania? I believe that there might be, yes. All right. I'm sorry to interrupt. In terms of this particular officer, though, in terms of what he did, he waited. Even though he had this information and he claims he got new information May 8th, he still didn't prosecute the gentleman until January of 2014, which would have been within like two months after my client was just about ready finishing his probation. And that's what caused him to get violated. What was the new information? That's what I'm still stuck with here. What was the new information? There was no what he claims as new information, meaning speaking a second time to the co-conspirator, if you will, co-defendant, who he had spoken to in January. Does the complaint allege that the second arrest was made based upon the very same information that the first arrest was made on? Our complaint says that, yes, that he used the same information. I don't think that Judge McKee is asking about the civil complaint. I think, Judge McKee, am I right? You're asking about the criminal complaint in 2014. Right. I believe the criminal complaint talks about the 19 packages. Did the second charge relate to the theft of the same, was it the same episode, relate to the packages that were in that van? Yes, Judge, and I believe that the counsel in his briefer, page 11, talks about the affidavit of probable cause, where it talks about the 19 packages that they found in the van. And that was the basis for the second charge? Correct. That's your position. That's correct. And in terms of the affidavit of probable cause, he didn't include about what happened in January. He just skipped to what happened in May, in terms of that he hadn't had a second, that this was the second conversation, which just repeated exactly what happened in the first conversation with the co-defendant. And with regard to... All right, and your claim is a 1983 claim on the basis of that second charge. Correct. That when you had the van with the 19 packages, and you're going to take one and then prosecute him one at a time for over 19 months or 19 years, however you want to do it, that that's malicious prosecution. And we should be allowed to develop those facts with this particular officer under the fact that, especially since he did not... Probable cause still existed. It existed in 13 and it existed in 14. So that's a conditioned precedent of being able to have a malicious prosecution claim. So I'm not sure what discovery would show you. Even if he did it with bad intent, it's a conjunctive test on probable cause. Probable cause still existed. It might have been better, more efficient, more compliant with the compulsory rejoinder rule to have prosecuted him all at one time for all of it. But it doesn't change the existence of probable cause. It's our position that the probable cause dissipated after there was the arrest, the investigation, we totally investigated everything except for the statement, and after we pled guilty, that everything in that, that at that point in time, that particular probable cause that he would have had in January and February dissipated. You're better off arguing that those cases are distinguishable because it's the same officer than trying to get into the finitia of minutia of what constitutes probable cause. You start going down that road, it seems to me the case law is really squarely against you, whether or not there's probable cause. He had probable cause. The issue is whether or not in this circumstance, in this situation, the cases which rely upon the existence of probable cause control. Well, I might add, in a double jeopardy situation, query whether there's probable cause every single time. That's a whole, you know, I don't know. But in this particular case, because we allege there were intentional omissions in his affidavit of probable cause, intentional omissions which allowed him to get the warrant, that it was malicious, that the whole thing was with malice, not even an omission, but it was with malice, that he did that with malice. I think the facts of this case, because he did not even prosecute him until January, even though he had all this information for more than a year, and potentially would have jeopardized his feeding trial rights for different things. But at this point, though, the lower court judge, listening to all the evidence, specifically said double jeopardy, not on any particular package, but on all the packages that were presented in the complaint. I think that you'd be bound by that, that he knew which packages related to which event, because, you know, they had the argument, which, unfortunately, was not recorded. Just the result was recorded on the record. But all of them, all the charges, you know, all the individual packages that were claimed in that second complaint were dismissed on the basis of double jeopardy. I'm good. Thank you. Okay. Thank you. Thank you. I'll take a brief break before I go on to the last case of Commonwealth Pennsylvania v.